Daniel Rios CHAVEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 07-92-0324-CR.

Court of Appeals of Texas, Amarillo.

Nov. 15, 1993.

Waters, Holt & Fields (David E. Holt), Pampa, for appellant.

John Mann, Dist. Atty., Tracey Jennings, Asst. Dist. Atty., Pampa, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

REYNOLDS, Chief Justice.

Upon the jury's finding appellant Daniel Rios Chavez guilty of the offense of delivery of less than 28 grams of cocaine, the trial court assessed his punishment at 10 years confinement and a fine of $5,000. Contending the trial court erred in allowing evidence of extraneous offenses and improper jury argument, appellant seeks a reversal and a new trial. Disagreeing with appellant's contentions, we will affirm.

The events leading to appellant's indictment were recounted to the jury consistently by Officer Mike Savage, case agent for the Panhandle Regional Narcotics Task Force, and Danny Winzer,[1] a contract worker for the task force. Winzer was wearing a body microphone during the entire transaction, and the underlying conversations with appellant and the other participants were tape recorded. The tape recording was discussed but not played for the jury or introduced into evidence at trial. Appellant presented no witnesses in his defense.

Although appellant does not challenge the sufficiency of the evidence to support his conviction as a party to the offense, a summary of the evidence is necessary to position his points of error. On 3 November 1991, Winzer and his brother, Odie Winzer, contacted appellant for the purpose of buying cocaine. Appellant and the Winzers travelled from Borger to the home of David Gutierrez in Pampa. From there, the four men went to the Kalarney bar in Pampa.

While at the bar, Gutierrez spoke to a "little Hispanic." When he returned to the other three men, he told them they could "get the cocaine," but they must wait for it at Winzer's house. Winzer gave Gutierrez $28, which Gutierrez gave to the "little Hispanic." The Hispanic man left the bar and drove away in a blue station wagon. After drink-

ing another beer, the four men left the bar, and drove to Winzer's house.

After the men had waited at Winzer's house for about fifteen minutes, the Hispanic man arrived in the blue station wagon. Gutierrez went to the passenger's side of the station wagon and gave the Hispanic man the remainder of the money for the cocaine, approximately $300, and the Hispanic man gave Gutierrez a "bindle"[2] of white powder. The powder was later analyzed and found to be cocaine.

Gutierrez returned to the other three men and gave Winzer the cocaine. He then asked if he could "get a little piece of the cocaine for his trouble." Winzer declined, but gave him $20, $10 of which Gutierrez gave to appellant.

Upon the indictment that appellant "intentionally, and knowingly deliver[ed]" less than 28 grams of cocaine, and the party charge given by the court, the State had the burden to establish that appellant aided, assisted or promoted the delivery made by Gutierrez. *Lacy v. State*, 782 S.W.2d 556, 558 (Tex.App.—Houston [14th Dist.] 1989, no pet'n). In order to meet this burden, the State offered Winzer's testimony that two days prior to the offense in question, on 1 November 1991, appellant "took [him] to buy some marihuana." Further, that Ted Ramon told him to "meet his man" the next day at 4:00 p.m., and he could get "an 8 ball of cocaine" for approximately $300, but that the meeting took place two days later, on 3 November 1991. Referring to the November 1 and 3 transactions, Winzer testified that appellant "set these drug deals up."

Appellant objected that to allow Winzer's testimony of the November 1 "extraneous offense is highly prejudicial to [him]."[3] The court overruled the objection and allowed the testimony.

By his first point of error, appellant contends the trial court erred in overruling

---

1. Reference herein to Winzer is to Danny Winzer, who is also occasionally identified in the record as Danni Winzer.

2. A "bindle" is a folded piece of paper, usually waterproof, with cocaine or other drugs inside.

3. The sufficiency of the objection under the requirements of *Montgomery v. State*, 810 S.W.2d 372, 387–89 (Tex.Cr.App.1990) has not been questioned by the State.

his objection. Appellant's contention requires a determination of whether the trial court abused its discretion in allowing the testimony. *Saenz v. State*, 843 S.W.2d 24, 26 (Tex.Cr.App.1992).

It is well settled that an accused may not be tried for some collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Cr.App.1983). Evidence of collateral crimes and general criminality is inherently prejudicial, and forces the accused to defend himself against charges which he had not been notified would be brought against him. Such evidence of a propensity to commit crimes is not material as to the accused's guilt of the specified conduct which is charged by the State; thus, it is inadmissible. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Cr.App.1983).

The first question we must ask when evaluating the admissibility of a particular piece of evidence is whether the evidence in question is relevant. While not all relevant evidence is admissible, all evidence that is not relevant is inadmissible. Tex.R.Crim.Evid. 402.[4] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R.Crim.Evid. 401.

Winzer's testimony that appellant had previously set up drug deals would have a tendency to make it more probable that he likewise aided, assisted or promoted the transaction in question, a material issue which the State was required to prove. Viewing the evidence in this light, the testimony evidenced it was more probable than not that appellant was a party to the instant offense and, as such, it was relevant. *Williams v. State*, 662 S.W.2d at 346–47.

Finding the evidence is relevant does not end our inquiry whether the trial court abused its discretion in admitting the evidence. Rule 404(b) provides that although relevant, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Tex.R.Crim.Evid.

404(b). However, if the evidence serves some purpose other than character conformity, such as need, to make the existence of a fact of consequence more probable than it would be without the evidence, it is admissible. *Montgomery v. State*, 810 S.W.2d 372, 391–92 (Tex.Cr.App.1990).

Such evidence may be admitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex.R.Crim.Evid. 404(b). If shown to fall within the outlined standards, the evidence is admissible unless its probative value is substantially outweighed by the danger of, inter alia, unfair prejudice. Tex.R.Crim.Evid. 403.

In response to a motion in limine, the State requested a hearing outside the presence of the jury to determine the admissibility of Winzer's testimony concerning the November 1 marihuana deal. During that hearing, Winzer testified that, at the time of the marihuana sale, arrangements were made with appellant and Ted Ramon to make a cocaine deal at a later date, and that appellant set up both transactions. The State offered the evidence to establish appellant's intent and plan to aid, assist or promote the November 3 cocaine delivery.

Moreover, appellant received a limiting instruction concerning the extraneous offense. *See* Tex.R.Crim.Evid. 105(a). The instruction directed the jury to consider "transactions other than, but similar to, the transaction for which [appellant] is now on trial," only in determining "the intent of [appellant] and knowledge of [appellant], if any, in connection with the transaction, if any, alleged."

Applying these standards to the record before us, we have determined that it was not an abuse of discretion for the trial court to have found the evidence had relevance apart from character and conformity, and that the events of the prior transaction were admissible to show appellant's intent and plan to facilitate the November 3 delivery by Gutierrez. Given the state of the record, the probative value of Winzer's testimony was not outweighed by any unfair prej-

4. Further references to rules are to Texas Rules of Criminal Evidence unless otherwise specified.

udice. Appellant's first point of error is overruled.

Utilizing his second and third points of error, appellant contends the trial court erred in allowing the prosecutor to comment in his closing argument on appellant's failure to offer a tape recording in evidence, which constituted an impermissible comment on his failure to testify. Appellant bases his contention on the following remarks:

> MR. MANN [prosecutor]: Thank you, Your Honor. Ladies and gentlemen you heard testimony about the fact that Mr. Winzer was wired with a body mike and there was a receiver on the other end that Mr. Savage was listening in on and in addition to that there was a recording device recording the conversation. The law-,yers in this case have had access to that tape recording. If Mr. Holt [appellant's counsel] had wanted to bring that tape recording in here and play to you what was said he could have done so.

Appellant's objection to the remarks was that it was improper argument, to which he added that he did not have any burden of bringing forward any evidence. Although the operation of Appellate rule 52(a) makes it questionable whether appellant's objection was sufficient to preserve the complaints he now makes to the argument for appellate review, the State has not raised the point, and we will address the points of error.

■ It is always impermissible for a prosecuting attorney to ask jurors to speculate on the law, the facts of a case, or hypothetical defenses a defendant could have presented to a jury. *Berryhill v. State*, 501 S.W.2d 86, 87 (Tex.Cr.App.1973). However, a prosecutor may comment on a defendant's failure to present any witnesses or evidence in his behalf, or to call certain particularized competent and material witnesses to testify about character, reputation or other relevant matters. *McKenzie v. State*, 617 S.W.2d 211, 219 (Tex.Cr.App.1981).

■ In determining whether the prosecutor's challenged remarks are permissible, the remarks must be considered in light of the facts and circumstances of the particular case. *McDaniel v. State*, 524 S.W.2d 68, 70 (Tex.Cr.App.1975). Any indirect comment does not constitute reversible error unless it called for a denial of an assertion of fact or for contradictory evidence that only appellant was in a position to offer. *Henson v. State*, 683 S.W.2d 702, 704–05 (Tex.Cr.App.1984).

■ In this instance, the prosecutor's remarks did not focus attention on issues only appellant could rebut by his own testimony, nor did it call attention to the absence of evidence that only appellant's testimony could supply. Thus, the argument was not one the jury would naturally and necessarily have taken as a comment on appellant's failure to testify. *Henson v. State*, 683 S.W.2d at 705. Appellant's second and third points of error are overruled.

Accordingly, the judgment is affirmed.